## The INHABITANTS of SANFORD v. EMERY.

In an action upon *Stat.* 1793. *ch.* 59, *sec.* 15. [*Revised Stat. ch.* 122. *sec.* 22.] for bringing into and leaving a pauper in a town where he has not a legal settlement, the *intent* of the defendant is a fact to be found by the jury.

And it is the *unlawfulness of the intention* which constitutes the offence against the statute.

Where, upon trial of a cause, there is no proof except what is offered by the plaintiff, and this is insufficient to warrant a verdict for him, the course is to direct a nonsuit.

THIS was an action of *debt*, brought to recover the penalty given by *Stat.* 1793, *ch.* 59, for bringing and leaving a pauper in the town of *Sanford,* in which she had not a legal settlement, the defendant well knowing her to be poor and indigent.

At the trial the plaintiffs proved by a letter of the defendant that he knew the pauper to be such, and that under the belief that she had a legal settlement in *Sanford,* he had brought and left her at the dwelling house of one *Allen* in that town. They also proved that she had resided in the family of *Allen* for several weeks previous to her departure from *Sanford;*—that she had been wandering about the country for about two weeks when

the defendant returned her;—and that when he brought her back he was told that she was not supported there by the town of *Sanford*, but that he might leave her with the family of *Allen*, who was willing to take charge of her.  She remained in his family a few days only; and the plaintiffs offered to prove that she immediately afterwards became chargeable to them, and so continued to the time of trial.  *Allen* had made no charge to *Sanford* for her support, and having known her many years, was willing to have kept her at his own expense.

Upon these facts being proved by the plaintiffs, the Judge directed a nonsuit, on the ground that the defendant having been informed that *Allen's* house was her home, and having left her there with his consent, the penalty was *not incurred*; and the question came before the whole Court on the plaintiffs' motion to set the nonsuit aside.

*Burleigh*, for the plaintiffs.

1. The language of the Statute is explicit, that if any person shall *bring in* a pauper, &c. he shall incur the forfeiture.  Its origin is found in the provision of the statute of *Elizabeth*, that each parish shall provide for the paupers *found in it*.

2. But if the *intent* of the defendant is to govern the case, that should have been left to the jury, it being a fact of which they are the sole judges.  *Aylwyn v. Ulmer*, 12 *Mass*. 24.  6 *Bac. Abr. Trial*, D.  Or, if the Judge was correct in assuming the determination of this fact, yet the evidence shews that the defendant well knew the pauper to be such, and brought her to *Allen's* with the avowed expectation that she would there be supported at the charge of *Sanford*.

*C. Green*, for the defendant.

The mischief intended to be remedied by the statute is the transferring of paupers from one town with the deliberate and improper *intention* to make them chargeable to another;—not to punish those who might act from motives of humanity, or a sense of justice and duty however mistaken,—but those who, from interested views, might attempt to impose on other towns burdens which the law had not created.  *Greenfield v. Cushman*, 16 *Mass*. 393.

Sanford v. Emery.

Now here the intent was manifestly to return the woman to her own home,—not to impose her as a pauper on a town to which she did not belong. It was an act of kindness and mercy, and not of relentless avarice and corruption. And this intention was proved by the plaintiffs themselves.

Whether the intent is a fact for the jury to find or not, it is not material in this case to inquire. The plaintiffs were nonsuited, not because upon weighing the evidence the case was with the defendant; but because they utterly failed to make out, even *primâ facia*, a case for themselves.

MELLEN C. J. delivered the opinion of the Court as follows, at the succeeding term in *Cumberland.*

The question is whether, upon the facts reported in this case, the defendant is to be considered as having incurred the penalty demanded.

In cases of this nature, where there is contradictory testimony as to the motives by which a defendant is actuated, it is proper that the whole should be submitted to the consideration of the jury. But where there is no proof, except what is offered by the plaintiffs, and *that* is insufficient to justify a verdict in his favor, and in fact furnishes a legal defence, it is always proper to direct a nonsuit.

On examining the facts before us, we think the action cannot be maintained. For although the 22d section of the act of 1821, *ch.* 122, (being a revision of the statute of *Massachusetts,* on which this action is founded,) is silent as to the *motive* with which a person may carry a pauper into a town in which he has not a legal settlement and there leave him; still the *unlawfulness of the intention* is the essence of the *act* and gives it the character of an offence against the statute.—On this principle it has often been decided in actions brought to recover a penalty for sawing or disposing of mill logs belonging to the plaintiff; that the penalty was not incurred, if the defendant took and carried away the logs, *really believing them to be his own.* Such belief negatived the idea of fraud, or any criminality of intention.— This principle is in accordance with the decision in the case of *Greenfield v. Cushman,* 16 *Mass.* 393.—In that case the Court sanctioned the instructions which the presiding Judge had giv-

en to the jury.—These instructions were " that it was incum-
" bent on the plaintiffs to prove that the defendant knew that
" Rowland was poor and indigent; and that he carried or caus-
" ed him to be carried to Greenfield with intent to impose a
" charge upon that town."—In the case before us it appears from
the plaintiffs' own testimony (and there was no other,) that the
defendant, under a belief that the pauper had a legal settlement
in Sanford, carried her to and left her at the house of one Allen
in that town by his express permission.—It is true he was told
by Allen, before he left the pauper at his house, that he had
been misinformed as to her having been boarded at his house
by the town of Sanford ; still it further appears that Allen nev-
er made any charge against Sanford, or any other town, for her
support in his family, prior to that time; and he declared he
never intended to make any charge on that account.—This
proof negatives the idea of an intention to impose a charge up-
on Sanford; and it also shews the irrelevancy of the proof of-
fered, and rejected by the Court, to shew that she afterwards be-
came chargeable.

For these reasons we are satisfied that the nonsuit was prop-
er and ought to be confirmed.

Motion to set aside the nonsuit overruled—and judgment entered
for the defendant.