THE PETITION OF JOSHUA W. BOOTH & ALS., SELECTMEN OF
GOSHEN *v.* THE COUNTY OF HILLSBOROUGH.

To give jurisdiction to the courts in this State to order the removal or return of county pau-
pers from one county to another it must be made to appear that they were first willfully and
fraudulently brought into the county where they did not belong, and through the wrong-
ful agency of the county actually chargeable for their support.

THIS was a petition for an order of court to remove a pauper in said
Goshen from this county to the county of Hillsborough.

The petition alleges that the pauper has no legal settlement, nor any
relation chargeable for her support within this county, and that, on or
about the first day of September, 1861, by the order and direction of
persons assuming to be Selectmen of the town of New Boston, in the
county of Hillsborough, the pauper was brought from said county of
Hillsborough into the town of Goshen and there left, where she has ever
since been supported as a pauper, at the expense of said Goshen, and
prays for an order that she be removed back to the county of Hillsbo-
rough.

The county of Hillsborough filed answer to the petition, that the pau-
per at the time of her removal from Hillsborough to Goshen had a le-
gal settlement in the said town, and that the pauper was removed at the
request and by direction of the Selectmen of said town of Goshen, upon
the understanding and belief, on the part of said Selectmen and of the
persons employed in so removing the pauper, that she had a legal set-
tlement in said town.

Upon the hearing by the court it appeared that the husband of the
pauper resided in Goshen from 1822 to 1826, upon a farm conveyed to
him by A. Hadley, Jr., Jan. 1, 1822 ; that, in March, 1826, the hus-
band conveyed the farm to one Cofran, that the husband lived on the
farm with his wife the pauper, and the husband was taxed for the farm,
invoiced at more than $150 for the years 1822, 1823, 1824, and 1825,
and paid said taxes ; that in September, 1822, the husband conveyed the
farm by warrantee deed to his minor son, and on the day of the date of
the deed from the husband to Cofran, the son quitclaimed the farm back
to his father.   But it also appeared that the Selectmen of New Boston,
and the Selectmen of Goshen, were ignorant of the fact that the husband
of the pauper had conveyed to his son in 1822, and that they supposed
and understood that the title to the farm remained in the husband until
he conveyed in 1826 ; that, acting upon this understanding after the town
of Goshen had been notified, in due and legal form, by the Selectmen of
New Boston, that the pauper was being supported by New Boston, as a
person having her settlement in Goshen, and of the sums expended, and
after some correspondence between the Selectmen of the two towns, in
which the Selectmen of New Boston claimed that the town of Goshen
was liable for her support, by reason of her settlement being in the lat-
ter town, the Selectmen of Goshen directed the pauper to be removed
from New Boston to Goshen, and she was accordingly so removed by
one Gilmore, a citizen of New Boston, and the town of Goshen assumed
her support upon the ground that the husband had acquired a settlement

in Goshen by owning real estate of the value of $150, and paying taxes thereon four years in succession ; that, soon after the pauper was so removed to Goshen, the Selectmen of Goshen discovered the fact that such conveyance had been made by the husband to his son, and thereupon they claimed of the Selectmen of New Boston that the pauper should be taken back.

For the purpose of having the question determined by the whole Court, whether upon this state of facts the petition can be maintained, irrespective of the question whether the pauper had or not a settlement in Goshen, the further hearing of the case is suspended, and that question reserved, either party having the right to be heard upon any other question of law, or upon any question of fact, after the question so reserved has been determined.

*Burke & Waite*, for Petitioners.

*G. Y. Sawyer*, for Petitionees.

NESMITH, J. The 10th section of chap. 67 of the Compiled Laws was intended to prescribe a remedy, where it is made to appear that a county, by its agents, having a poor and indigent person, whom they know to be thus poor and indigent, and for whose support such county may be chargeable by law, shall willfully bring into, and leave such poor person in, some other county, or attempt so to do, for the evident purpose of relieving themselves from the expense and charge of his maintenance.

The 11th section of said act appears to have been intended to furnish a remedy, by giving authority to the court to return the poor or indigent person to the county from which he was wrongfully brought. The object of this part of the aforesaid statute was to punish or prevent the fraudulent transfer, or the attempted transfer, of a county pauper from the county where he rightfully belonged, to another where he did not belong.

In cases of this kind, it becomes material to inquire into the motive under the influence of which the act may have been committed. A person may innocently transport a poor person from one county to another. There must be some culpable intent shown, giving such act the character of crime, in order to expose the party committing it to the penalties prescribed in the 10th section of the act. Such a construction appears to have been given by the court in Massachusetts upon a statute analagous to our own in principle. *Deerfield* v. *Delano*, 1 Pick. 469 ; *Greenfield* v. *Cushman*, 16 Mass. 393 ; chap. 59, Mass. Stat. 1793, sec. 15 ; ch. 46, Mass. Rev. Stat. sec. 24 ; ch. 70, Gen. Stat. sec. 20.

In both of the preceding cases, the jury were instructed by the court to inquire into the true *intent* with which the defendants committed the act charged against them, and that it must be found by them to have been wrong or fraudulent, before the defendants incurred the penalties of the statute in that State.

The *quo animo* under which the act was done is the material matter of inquiry.

So the court here cannot take jurisdiction of this case, to order a re-

turn of the pauper in question from the county of Sullivan, unless it be made to appear affirmatively that such pauper was wrongfully or fraudulently conveyed there from Hillsborough county; it being also presumed that the pauper in question was a pauper that the county of Hillsborough was bound to support.

The facts disclosed in the case do not show that the county of Hillsborough, by her agents, have participated in imposing any illegal burthen either upon the town of Goshen, or the county of Sullivan.

Nor does it appear that the authorities of New Boston exercised any improper influence or artifice in removing the alleged pauper from their town to Goshen. What was then done seems to have been in good faith, and in accordance with what was then supposed the legal obligations of the statute law applicable to the circumstancss of the case before them.

Under the present statement of facts before us we cannot order the removal of the alleged pauper, as desired by the petitioners.

If it shall turn out that the pauper has no residence in Goshen, the probable remedy of the petitioners may be upon the county of Sullivan. For the present,

*The case  must be discharged.*